*Decisions will be entered under Rule 50.*

EVANS MOTOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66001.   Filed December 30, 1957.

*Percy E. Godbold, Jr., C. P. A.*, for the petitioner.
*Lester R. Uretz, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge:* The Commissioner has determined deficiencies in petitioner's income tax as follows:

| Year | Deficiency |
|---|---|
| 1953 | $555. 15 |
| 1954 | 128. 60 |

The deficiency for 1953 is due to one adjustment made by the Commissioner to the net income reported on petitioner's return, "(a) Finance Reserve Income $1,850.55." This adjustment is explained in the deficiency notice as follows:

(a) It is determined that income realized by you from dealers finance reserve and not reported on your return for the taxable year ended December 31, 1953 constitutes income for that year in the amount of $1,850.55 under the provisions of section 22 of the Internal Revenue Code of 1939.

The deficiency for 1954 is due to a similar adjustment, though for a smaller amount. The explanation of the adjustment contained in the

deficiency notice is the same as that for 1953, except that the statute to which reference is made is section 61 of the Internal Revenue Code of 1954.

The assignment of error to these adjustments is as follows:

In determining the tax liability in 1953 and 1954 the Commissioner added to taxable income in each year an increase in a Finance Reserve held by American Discount Company and not available to the taxpayer. This is erroneous as this Finance Reserve is only a contingent asset, and is not available and may never be available to petitioner.

The facts have all been stipulated and are found as stipulated. These facts may be summarized as follows:

The petitioner is an Alabama corporation having its principal place of business in Talladega, Alabama. It filed its income tax returns for the calendar years 1953 and 1954 with the district director of internal revenue at Birmingham, Alabama.

During the taxable years and for many years prior thereto petitioner was engaged in the business of buying, selling, and servicing new and used automobiles.

The petitioner keeps its books and files its income tax returns on an accrual basis.

A substantial portion of petitioner's sales of automobiles during the taxable years was made under conditional sale agreements under which the purchaser, after making a downpayment, agreed to pay the balance of the purchase price, plus financing charges and other charges, over a period of time. The conditional sale agreements provided that title to the car would remain in the seller or assigns until all amounts due under the contract were paid in full and that the contract might be assigned.

At all times during the taxable years there was in force and effect between petitioner and American Discount Company a "Dealer Reserve Agreement" pursuant to which petitioner sold conditional sale agreements to American Discount Company. The dealer reserve agreement entered into by petitioner and American Discount Company on February 14, 1953, which remained in full force and effect for the balance of the taxable period here involved, provided as follows:[1]

To: AUTO FINANCE COMPANY/or
 AMERICAN DISCOUNT COMPANY:

1. You propose to buy from us on a non-recourse plan with dealer participation, paper, hereinafter called "contracts," acceptable to you covering new and used cars and this agreement states the basis of purchase.

2. In consideration of the purchase by you of such acceptable contracts under this agreement, it is agreed that if you repossess or recover any cars covered by said contracts, for any reason, you will give us the refusal of purchasing

---

[1] The strikeovers which appear in the dealer reserve agreement appear in the copy attached to the stipulation and the instrument itself has been copied exactly as it appears. No point or explanation of these strikeovers has been made by the parties.

such cars where located, from you for cash, the purchase price, payable on demand, being the unpaid balance due on the car. However, if for any reason, we do not repurchase the repossessed car from you, we agree that any loss resulting from the sale of the car by you will be charged to the "Special Reserve" account as set up below. Any cars returned to us for repurchase will, until payment is made, be stored at our risk and expense and as your property, and will be delivered to you on demand.

It is further understood that we have no liability on losses which would normally be referred to as "3-C LOSSES" under a dealer "REPURCHASE PLAN" and such losses will NOT be charged to this "Special Reserve" account as set up below. These losses will include those due to confiscation, collision, and conversion.

3. Your standard Rate Charts will include the following Dealer Reserve: 17½% Gross Finance Charges. $17.50 per deal held in Special Reserve.

No Reserves are to be set up on short term notes, demonstrators, or other special plans, announced by you from time to time, except as may be hereafter agreed upon in writing. Payments from the "Regular Reserve" account on both new and used cars will be payable to us on demand. Amounts accumulated in the "Special Reserve" account are to be held by you until such time as these amounts equal to or exceed 3% of our retail outstandings with you. Amounts in the "Special Reserve" account in excess of 3% of our retail outstandings with you are payable to us on demand. It is understood that the above reserves will be subject to a minimum net finance charge of $15.00 on each contract.

On special rate transactions, if a reserve is payable, we will receive in reserve the same ratio or percentage as the special rate bears to your standard rate.

4. If you refund any part of the service charge because a contract is prepaid, we agree to pay you the same percentage of all reserves credited to or paid us on the contract as the amount of service charge refund bears to the amount of the original charge exclusive of insurance premiums. If an account is paid off within 30 days, the reserve may be cancelled flat.

5. We shall have full recourse endorsement liability without any protection whatsoever if we make any settlement with a purchaser without your written consent, disclose any provision of this agreement directly or indirectly to the purchaser, or breach any provisions of the assignment to you, and in such cases you are hereby authorized to make any necessary corrections in our endorsement.

6. This agreement shall apply to all contracts hereafter sold to you and endorsed without recourse, unless otherwise specifically agreed in writing with respect to the particular contract, irrespective of transfers between purchasers and until the contract is liquidated. No waiver or change of any provision shall be binding on you unless evidenced by writing signed by one of your officers and this agreement shall inure to and bind our respective successors and assigns and any company affiliated with you which may transact business hereunder and shall be construed as a contract under the laws of the State where accepted by you.

7. This agreement may be terminated by either party by giving the other written notice. It is understood that such termination will not affect the terms of this agreement with respect to contracts purchased prior to the receipt of the notice of termination.

ACCEPTED:  
    Auto Finance Company/or  
    American Discount Company

SIGNED:  
DEALER  
    Evans Motor Co., Inc.  
    Corporate, Individual or  
    Firm Name

In the year 1953, petitioner received $6,174.47 from the regular reserve account of American Discount Company and included $5,907.63 of this amount in its taxable income. In the year 1954, petitioner received $3,916.87 from the regular reserve account of American Discount Company and included $3,894.64 of this amount in its taxable income.

The balance in the petitioner's special reserve account on the books of American Discount Company was as follows:

| | |
|---|---|
| Dec. 31, 1952 | –0– |
| Dec. 31, 1953 | $1,583.71 |
| Dec. 31, 1954 | 1,990.15 |

The amounts credited to the special reserve account in 1953 and 1954 were not carried through to, or reflected in, the gain or loss accounts on the petitioner's books and were not reported as taxable income for the taxable years here involved.

At no time in 1953 or 1954 did the amount in the special reserve account exceed 3 per cent of the outstanding balance on conditional sale agreements purchased by American Discount Company from petitioner.

Petitioner prepared conditional sale agreements on forms supplied by American Discount Company, obtained prior credit approval from American Discount Company, and used rate charts supplied by American Discount Company.

Petitioner uses the specific chargeoff method of deducting bad debts on its books and on its income tax returns. On its return for 1953, petitioner deducted 38 bad debts ranging from $1 to $104.51 in amounts, and all aggregating $704.76. In his determination of the deficiency for 1953, the Commissioner has not disallowed any of these bad debts. In its return for the year 1954, petitioner deducted 49 bad debts ranging from 46 cents to $258.63 in amounts, and all aggregating $1,278.50. In his determination of the deficiency for 1954, the Commissioner has not disallowed any of these bad debts.

It will be noted from the facts which have been stipulated and summarized above that the petitioner returned in its 1953 return, $5,907.63 placed by American Discount Company in petitioner's regular reserve account. Petitioner concedes that this was taxable income and also concedes that $266.84 was erroneously omitted from its 1953 return and that this amount should be added to the $5,907.63 which it reported for that year. A similar concession is made for the year 1954, and petitioner concedes that $22.23 should be added to the $3,894.64 which it reported from its regular reserve account in 1954.

This leaves for our consideration and decision the $1,583.71 which was to the credit of petitioner's special reserve account with American Discount Company on December 31, 1953, and the $406.44 which was added to this special reserve account in 1954. The Commissioner has

added these amounts to the income reported by petitioner on its returns because the petitioner had excluded them. The petitioner assails this action of the Commissioner as error on the ground that the amounts placed by American Discount Company in petitioner's special reserve account were only a contingent asset and were not available to petitioner in the taxable years and may never be available to it.

The provisions of the contract which petitioner had with American Discount Company relating to the special reserve account are contained in the copy of the contract which we have included herein. These provisions read, in part, as follows:

Amounts accumulated in the "Special Reserve" account are to be held by you until such time as these amounts equal to or exceed 3% of our retail outstandings with you. Amounts in the "Special Reserve" account in excess of 3% of our retail outstandings with you are payable to us on demand. * * *

It is petitioner's primary contention that because it has been stipulated "[a]t no time in 1953 or 1954 did the amount in the 'Special Reserve' account exceed three percent of the outstanding balance on conditional sale agreements purchased by American Discount Company from petitioner," that none of the amounts credited to petitioner's special reserve account during the taxable years can be properly included in petitioner's income. We cannot agree with petitioner in this contention. In the first place, it must be borne in mind that petitioner was not selling automobiles to American Discount Company; it was selling installment notes to that company, secured by conditional sale agreements. Its automobile sales were being made to individual purchasers, generally for a downpayment in cash or trade-in payment, with the balance to be paid in monthly installments.

If petitioner had been on a cash basis it doubtless would have returned as gross income the cash or trade-in property which it received from the sale plus the fair market value of the note which it received from the purchaser. If the note had no fair market value it would not have to be returned as gross income by a cash basis taxpayer. But it must be remembered that petitioner was not a cash basis taxpayer. It is stipulated that it kept its books and records and filed its income tax returns on an accrual basis. This being true, petitioner would have to accrue as gross income the full sale price of the car. When it sold the installment payment note which it received from the purchaser, there was no deduction which it could take as a loss unless it, in fact, sold the note at less than face amount. Of course, if petitioner should sell one of these notes at less than its face amount it would doubtless be entitled to take a loss. For example, if petitioner sold one of its installment notes of the face value of $1,000 to American Discount Company for $950, it would doubtless be entitled to take a loss of $50 on the transaction. But such is not

the transaction here. Still using the $1,000 installment note as an illustration, when petitioner assigned this note to American Discount Company it received a certain amount in cash and the balance was credited to its reserve accounts. These two amounts, as we understand it, amounted to the full face value of the note, $1,000.

As we have already stated, petitioner concedes that the amounts credited to its regular reserve account should be included in its gross income. However, petitioner contends that the amounts credited to its special reserve account should not be included in its gross income because its right to receive any part of this special reserve account was too contingent to be accrued as income.

As we said in *Texas Trailercoach, Inc.*, 27 T. C. 575, 581 (1956), on appeal (C. A. 5):

Since the full sales price of the trailer is accruable at the time of the sale, the *real question* involved, we think, is not whether the amount in the dealers' reserve account is includible in income, but whether the amount in the dealers' reserve account is deductible from income. [Emphasis supplied.]

We think what we said in the *Texas Trailercoach* case as quoted above is also applicable in the instant case. It is true that in the *Texas Trailercoach* case trailers were being sold by the taxpayer, whereas here automobiles are being sold by the petitioner, but we think that makes no difference. We think that the reserve accounts in both cases must be dealt with in the same manner from an income tax standpoint. In the *Texas Trailercoach* case we sustained the determination of the Commissioner and we think we must sustain him here.

Petitioner earnestly contends in its brief that:

The transaction whereby the car was sold and the note was transferred to the American Discount Company was a single transaction as the credit was checked and approved by the American Discount Company before the petitioner would make the sale and the conditional sales agreement was made on a form supplied by American Discount Company, using a rate chart supplied by American Discount Company.

Petitioner's contention that the several steps involved should be treated as a single transaction is contrary to what we have held in other cases where these automobile and trailercoach reserves were involved. For example, in *Shoemaker-Nash, Inc.*, 41 B. T. A. 417, 422 (1940), one of the leading cases on the subject, we said:

The petitioner being on the accrual basis, we assume that such profit as may have been realized on the sale of the automobile itself was accrued on petitioner's books when the sale was made and the subsequent sale of the notes to the finance company was a new and separate transaction. * * *

In *Blaine Johnson*, 25 T. C. 123 (1955), revd. (C. A. 4, 1956) 233 F. 2d 952, we followed the *Shoemaker-Nash* case, *supra*, in its holding as to the separateness of the transactions. Also in *Texas Trailer-*

*coach, supra,* we held the same way as to the separateness of the transactions. However, in the *Texas Trailercoach* case we pointed out that whether the transactions involved were viewed as one single transaction or whether the transactions were treated separately the result must be the same. On that point we said (pp. 581–582):

And regardless of whether the sale of the trailer and the sale of the contract are viewed as two separate transactions or as one transaction the result must be the same. In either case the only thing that will prevent the Dealer from receiving the full sales price is the possibility that the purchaser will default. As we said before, that contingency is not sufficient to defer the accruing of income that has been earned. * * *

It is proper to point out that in the instant case petitioner used the specific bad debt chargeoff method in taking deductions for losses on bad debts. In its 1953 return it took deduction of bad debts aggregating $704.76. In 1954 it took deduction of bad debts aggregating $1,278.50. These deductions were allowed by respondent in his determination of the deficiencies and are not in issue.

Certainly, petitioner has not proved in the instant case that it is entitled to any further deduction either as a loss or a bad debt chargeoff of the amounts held to its credit by the American Discount Company in petitioner's special reserve account on the books of the company. If at some time in the future petitioner suffers any loss of the amounts in its special reserve account, there are provisions in the statute which will enable petitioner to take its loss. Until such loss is realized, no deduction is warranted.

On this issue we sustain the Commissioner.

In support of its contention petitioner cites and relies upon two cases: *Johnson* v. *Commissioner*, (C. A. 4, 1956) 233 F. 2d 952, and *Keasbey & Mattison Co.* v. *United States*, (C. A. 3, 1944) 141 F. 2d 163. In *Texas Trailercoach, supra,* we took note of the Fourth Circuit's reversal of our decision in *Blaine Johnson, supra,* as follows (pp. 582–583):

The Court of Appeals for the Fourth Circuit has reversed *Blaine Johnson, supra,* in *Johnson* v. *Commissioner*, (C. A. 4, 1956) 233 F. 2d 952. The petitioner in its reply brief, which was filed after the Fourth Circuit reversed us, calls our attention to this reversal and relies upon it in support of its position. However, after carefully reexamining the question involved and with due respect and deference to that court we feel compelled to follow our own decisions for the reasons set forth above. Accordingly, the determination of the respondent is upheld.

In our own decision in *Blaine Johnson, supra,* we took note of the Third Circuit's decision in *Keasbey & Mattison Co.* v. *United States, supra,* in the following manner (p. 130):

Though the trailer dealer may receive no more than the full face value of this paper while the automobile dealer may receive a profit on its sale, such difference relates only to the amount the dealers may ultimately receive and not to the treatment to be accorded the dealer reserves by accrual basis beneficiaries

of these reserves. Although a distinction of this nature was accepted in *Keasbey & Mattison Co.* v. *United States*, (C. A. 3) 141 F. 2d 163, the distinction is not supportable logically; and neither the facts in *Shoemaker-Nash, Inc.*, *supra*, nor the circumstances here support it.

Therefore, having heretofore taken note of the two cases upon which petitioner relies and having with all due respect and deference to the two United States Courts of Appeals noted our unwillingness to follow them ·on this question of the treatment of these reserves, we feel that no further discussion along that line is needed here.

*Decision will be entered for the respondent.*